Harper, J.
The appeal is only from so much of the decision of the .Chancellor as overrules the pleas of the defendant. In this respect we agree with the Chancellor. He reports that the woman, Judy, had the uninterrupted enjoyment of freedom from the date of the deed to her death, and was recognized as a free person by the will of her former owner, John Cato Fields. Under these circumstances, I am of opinion that neither John Cato Fields, nor any person claiming as a volunteer under him, could dispute the validity of the emancipation, even if there had been no deed.
*13] When a statute is passed authorizing a proceeding, which was not allowed by the general law before, and directing a mode in which the act shall be done, here the mode pointed out must be strictly pursued. It is a condition on which alone a party can entitle himself to the benefit of the statute, that its directions shall be strictly complied with; otherwise the proceeding will be void. But when a proceeding is permitted by the general law, and an *Act of the Legislature directs a particular form and manner in which it shall be conducted, then it will depend on the terms of the Act itself, whether it shall be considered merely diréetory, subjecting the parties to some disability if it be not complied with, or whether it shall render the proceeding void. If no emancipation were permitted, (as the law is at present,) and an Act of the Legislature should permit owners of slaves to emancipate them in some prescribed form, if the form were not complied with, the Act would be void. But the several Acts of the British Parliament directing that public officers shall not enter on the duties of their office until they shall have taken the oaths to government, have been construed not to render their official acts void if they will take upon themselves to act, but to render the officer personally responsible for a violation of law. . There are a great number of instances of the same sort.
It is to be recollected that before the Act of 1800, which is now in question, emancipation was permitted in any manner by which the master might signify his intention to emancipate. The Act prescribes that after its passage “it shall not be lawful for any person or persons to emancipate his, her or their slave or slaves, except according to the forms and regulations hereinafter prescribed,” &c. If the Act had stopped here there might be ground to contend that the act of emancipation would be void, if not done in the manner prescribed. But the Act itself goes on to say what the consequences shall be if the forms and regulations directed by it are not pursued. A subsequent clause provides, that “in case any slave shall hereafter be emancipated or set free, otherwise than according to this Act, it shall and may be lawful for any person whatsoever to seize and convert to his or her own use, and to keep as his or her own property, the said slave, so illegally emancipated or set free.” Here is a plain recognition by the Act itself, that slaves may be emancipated or set free, *17 otherwise than according to its directions. On this view was founded the decision of the Court, in Johnson v. Linam, 2 Bail. 13Y. Where the master had emancipated the slave in an irregular manner, it was held that, however the slave might be liable to seizure under the terms of the Act, the master’s properety was divested, so that he could not maintain an action to recover the slave. There can be no slave without a master, and it follows, that after such irregular emancipation, until seizure is actually made, the emancipated slave must stand on the *footing of .-.¡., . any other free negro. In the case before us, the woman was never >- seized, and being now dead, never can be, Her legal representative has the same standing in Court that the representative of any other free negro would have. It is true that the presumption of our law is against a negro’s freedom, and that this is a question which concerns the public. But the security of the public was provided for by subjecting the irregularly emancipated slave to seizure. As between the slave and the master, or those claiming under him, it is merely a question of individual right.
The view which I have taken might, for the purposes of the present case, dispense with the necessity of considering the topics which were urged in argument with respect to the validity of the deed itself. I shall, however, advert to them very briefly.
First, as to the delivery. I concur with the Chancellor1, that if it were necessary to rest upon presumption, there is enough to presume a delivery of the deed. There is nothing in the Act to render a trustee or guardian necessary. Before the Act, the very fact of executing -the deed would have rendered the slave capable to accept it. But from the terms of the whole Act, I am satisfied that the only delivery contemplated was the lodging of the deed with the clerk to be recorded. It is not to be supposed that the maker of the deed, against whom it is evidence, shall be the person to retain it. The emancipated slave is not to have it, for he is to be furnished with a copy attested by the clerk, and it is made the duty of the master, under a penalty, to deliver to him such copy, and consequently, to deliver the deed to the clerk, who is to furnish and attest such copy.
It would be useless to inquire, whether the provision of the Act, that the deed shall be void unless recorded within six months, was intended merely for the benefit of creditors and purchasers, or applies to the master himself; as from the view I have taken, the master is bound by his act of emancipation, independently of the deed.
Then supposing the deed to have been lodged within the time prescribed by law, I am of opinion that this was a sufficient recording within the meaning of the Act. The clerk is a public officer, directed to record such deeds when lodged with him, and his neglect or omission would not be permitted to work a prejudice to *third persons who were in no default. But, as was said in argument, recording does not merely mean transcribing in a book. The rolls of Courts are records, though not transcribed. The original furnishes at least as authentic evidence as a copy, and if that be lodged in the office, there to remain as a public document for the information of all who may inquire, this is a sufficient recording, however proper and convenient it may be, that the clerk should make a transcript in a book kept for that purpose.
Then the deed being found in the clerk’s office, without any evidence *18 of the time when it was lodged, ave we to presume it was lodged within the time prescribed by law, or the contrary ? Without entering to reasoning on the subject, I incline to the opinion that with respect to any person who should seize the slave, provided it appeared that the deed was actually in the office at the time the seizure was made, the presumption would be, that it was lodged in due time. With respect to creditors and purchasers, I give no opinion.
The motion to reverse the Chancellor’s decision, is refused.
Johnson and O’Neall, Js., concurred.